# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JAMES NATHAN JOHNSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV409-175 |
| | ) | CR408-021 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Alleging that the first of his two trial attorneys was ineffective in failing to timely inform him of a guilty-plea offer, James Nathan Johnson moves this Court under 28 U.S.C. § 2255 to vacate his conviction on gun and drug charges. Doc. 56.[1] His motion should be **DENIED**.

Johnson was indicted for possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count One), possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two), and possession of firearms

---

[1] There are two files on this matter, CV409-175 and CR408-021. All "doc." cites are to CR408-021. All evidentiary hearing exhibits are labeled "Plaintiff's Exhibit No." and "Government's Exhibit No." For convenience, the Court will reference them as "P" and "G" respectively (e.g., P-1 and G-1).

by a felon, in violation of 18 U.S.C. §922(8)(1) (Count Three). Doc. 1. He ultimately plea-bargained away Count Three and pled guilty to Counts One and Two, docs. 39, 40, 37, 50, received a 78-month sentence, doc. 50, then took no appeal.

Between the indictment and guilty plea, however, Johnson complained about his court-appointed counsel, Thomas J. Mahoney. Doc. 23 (his letter to the Court). In response, the undersigned held a hearing, doc. 57, and found no cause for relief. Doc. 57 at 17 ("THE COURT: I just don't see any reason why he should be excused. And just a lack of comfort on your part with Mr. Mahoney, or that you just don't have good feelings about him, is not enough in and of itself. . . . A. MR. JOHNSON: I apologize for wasting your time. . . ."). Nevertheless, the Court later authorized Mahoney's withdrawal and replacement by retained counsel Diane M. McLeod, who represented Johnson through his guilty-plea hearing. Docs. 34, 39, 42, 48.

In his § 2255 motion as initially presented, Johnson took issue with both attorneys. In his first claim, the only claim presently under consideration, Johnson alleged that Mahoney provided him with ineffective assistance of counsel (IAC) by failing to inform him of the

government's initial plea offer -- a 37-46 month plea.[2] He says Mahoney told him only that a five-year-to-life deal had been offered, and even at that, Mahoney had to verify it because it was for a "'James A. Johnson' and not James N. Johnson.'" Doc. 56 at 4; *id.* at 15 & n. 1. Losing confidence in Mahoney, Johnson hired McCleod, who then, according to Johnson, learned about the earlier offer and asked him why he did not take it. *Id.* at 15-16. Johnson replied that he would have taken it had he known of its existence. *Id.* at 16. He reiterates those assertions in his § 2255 motion. *Id.*

With the first offer expired, Johnson says he rejected a second, less desirable five-year-to-life offer conveyed by Mahoney. Turning to his now defunct claims, he alleges that McLeod rendered ineffective assistance by "refus[ing] to inform the [C]ourt of . . . [Mahoney's] ineffective assistance regarding his failure to communicate the government's [earlier, 37-46 month] offer of the lesser plea agreement."

---

[2] Under two-part test found in *Strickland v. Washington*, 466 U.S. 668 (1984), for determining whether counsel performed ineffectively, Johnson must first prove that Mahoney's service to him was deficient *and* prejudicial. 484 U.S. at 687. To meet the prejudice prong in this context, Johnson must show that there is a reasonable probability that but for counsel's errors he would have pled guilty to this first offer and would not have then persisted in heading to trial. *Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009); *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995); *Doe v. United States*, 2010 WL 1737606 at * 6 (S.D. Ga. Apr. 12, 2010).

Doc. 56 at 7. McLeod also allegedly failed him in other ways before and after Johnson, as mentioned above, accepted the third plea offer. *Id.* at 4, 8.

The Court ordered the government to respond to Johnson's allegations. In that response, the government noted that IAC claims can be raised collaterally, doc. 64 at 4, then conceded that Johnson was entitled to an evidentiary hearing. Doc. 64 at 5. The Court agreed, doc. 67, reported at 2010 WL 1540119, and held a hearing on June 29, 2010. Doc. 79; *see Nichols v. McNeil*, 331 F. App'x 705, 708 (11th Cir. 2009) (evidentiary hearing was warranted on merits of defendant's habeas claim that trial counsel was ineffective in not informing him of prior plea deal).

At the evidentiary hearing Johnson, now represented by new counsel, dismissed all but his claim that Mahoney was ineffective for failing to advise him of the first, "37-46" offer. The Court heard testimony from Johnson, McLeod, Mahoney, and prosecutor Karl Knoche.[3] This overarching theme guides the Court's findings: The early stages of plea negotiations are often not formalized. They may be

---

[3] This Report and Recommendation quotes testimony from the June 29, 2010 hearing's audio recording, which has not yet been transcribed. *See* doc. 79 (noting electronic storage of that recording).

initiated in a courtroom hallway, over the phone, via email, and so on, so it is not surprising that a formal written record may not exist as to who initiated a plea negotiation, when, what precisely was said, and how it is transmitted to the defendant and back to the prosecutor.

Knoche, for example, has only in the past year or so taken to responding to plea entreaties by sending full-fledged plea agreements bearing all of the government's terms. But other prosecutors may negotiate verbally over the phone or in bare-outline terms via email. Defense counsel, in turn, may simply save an email "to the file" or affix a "post-it" note to a page of file notes to document what each side offered, along with communications with the client about it. Then, if the parties advance to a deal, more comprehensively documented communications can be generated (e.g., an email back to a prosecutor, who then reduces what was orally discussed into a formal plea bargain agreement finalized through back-and-forth drafts).

Similarly, there is nothing compelling a defense lawyer to document every moment of communication with his client, let alone conferences where government plea offers are discussed. Certainly it has been done and is the more conscientious practice, but it is not required.

*See, e.g., Doe*, 2010 WL 1737606 at *5 n. 6 ("Mr. Neville's letter just standing alone, looking at it without any other surrounding testimony here, would be a model that we could use at seminars for how to write and present a letter to a client telling him what the facts were and what the attorney's assessment of a plea offer would be, and what range would be from it. It is a well written letter.") (quotes and cite omitted).

Here the evidence shows that on April 4, 2008, Knoche, in an email to Mahoney, made his first plea offer. He offered

> to let this go for a plea to the drug charge and the felon in possession charge. We would dismiss the most serious charge which is the 9214c -- a five year mandatory term consecutive [to] the drug sentence. You client's base offense level would be around 20 -- he could get three levels off for acceptance of responsibility. [¶] Let me know if this works and I'll forward a plea agreement.

P-2; G-8. Hence, the government offered to drop Count Two (the gun charge) in exchange for Johnson's guilty plea to Counts One and Three. Under the *statutory* penalty range, *see* doc. 2, Counts One and Three exposed Johnson to no more than 5 and 10 years' imprisonment respectively (hence, up to 15 years), while Count Two carried a 5-to-life range. Doc. 2. Knoche left it up to Mahoney to work out the projected United States Sentencing Guidelines (USSG) sentence, but at the June

6

29, 2010 hearing it "sounded right" to him that this offer would result in a 46-57 (not 36-47) month USSG range. Knoche's file showed that he received no written response to this first offer, but he did not dismiss the possibility of an oral, yet now forgotten, response. In any event, this (up to 15-year maximum) would be his best offer, consistent with his practice of tightening the noose as more of his efforts are consumed.

Knoche recalls making a second offer to Johnson, through Mahoney, "about a month later." *See* G-9; P-3. Under that, Johnson would plead only to Count two and face a likely sentence of five years, but no more since he was not a career offender. (Mahoney's notes reflect that Mahoney initially was in doubt about that given Johnson's prior criminal record). Knoche, for that matter, made the same offer that he had also made to Johnson's co-defendant. This second offer was not meant to supersede his first, but merely serve as an alternative. He recalled simply wanting to treat the two co-defendants equally, and since he had just offered this to co-defendant Bertram Wendell Martin, he did the same for Johnson. Knoche found no indication in his file that Johnson formally declined this second offer. But he was sure that

7

Johnson "did not accept it." Knoche also agreed that 46-57 months on the first offer ("if the judge gave him a Guidelines sentence") was preferable to the mandatory 60-month sentence on his second plea offer.

On August 11, 2008, Knoche emailed Johnson's counsel (by this time McLeod) his third and final plea offer, wherein Johnson would plead to Counts One and Two, with Count Three dismissed and the government not opposing a "2-level reduction for acceptance of responsibility." P-5. Knoche agreed that this was the least favorable of the three offers he made, since by this point Knoche had already prepared for trial and Martin had agreed to testify against Johnson. Johnson accepted this offer, P-6, and received a 78-month sentence (18 months on count 1, and 60 months on count 2). Doc. 50; doc. 59 at 7. So, Knoche's offers, viewed in hindsight and under his estimation of the Sentencing Guidelines range, went from an exposure of 46-57 months, to 60 months, and finally resulted in a 78-month sentence upon acceptance of the third offer.

Knoche emphasized that the government would not have accepted a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 36 (1970)

(permitting a defendant to enter a plea of guilty without admitting guilt in order to avoid a more serious sentence). That means that Johnson had to admit his guilt to both his attorney and then to this Court in order to complete the negotiated guilty plea. To that end, every plea agreement Knoche offers bears the same pre-printed passage requiring a defendant to truthfully "[a]cknowledge at the time of the plea the truth of the 'Factual Basis' contained in the plea agreement. . . ." Doc. 47 at 2 (Johnson's actual plea agreement); *see also id.* at 5.

In analyzing Johnson's claim, then, he must first meet the "deficiency" prong of the two-prong *Strickland* IAC test by showing that no reasonable counsel would have failed to communicate to him the first plea offer. *See Padilla v. Kentucky*, 130 S.Ct. 1473, 1482 (2010) ("guilty-plea IAC" standards); *Boyd v. Waymart*, 579 F.3d 330, 332 (3rd Cir. 2009) (en banc) (recognizing IAC claim against trial counsel for rejecting plea offer without communicating its terms to petitioner); *Wyatt v. United States*, 574 F.3d 455, 457-58 (7th Cir. 2009); CRIMINAL PROCEDURE HANDBOOK § 3:52 (*No prejudicial ineffective assistance of counsel--Plea process*) (2010). The Court agrees that if Mahoney failed to

communicate Knoche's first offer, he would have been "*Strickland* deficient."

But even if Johnson showed that Mahoney dropped that ball, he would also have to meet the prejudice prong by showing that he would taken that first plea offer. *See, e.g., United States v. Feyrer*, 333 F.3d 110, 120 (2nd Cir. 2003) (no prejudice where the defendant does not indicate he had an unequivocal willingness to plead guilty, and his affidavits consistently assert his innocence), *cited in* INEFFECTIVE ASSISTANCE OF COUNSEL § 6:15 (*Advice regarding guilty pleas--Not ineffective--Prejudice--Failure to apply or inform defendant of applicable law*) (2010); *see also Kagan v. United States*, 2003 WL 21991585 at * 4 (S.D.N.Y. Aug. 20, 2003) (defendant failed to demonstrate the required reasonable probability that but for counsel's performance, he would have pled guilty; hence, he did not indicate an unequivocal willingness to plead guilty and his affidavits repeatedly assert his innocence, a position that was obviously incompatible with the suggestion that he would have readily pled guilty); *Miller v. McNeil*, 2010 WL 2613320 at * 2 (S.D. Fla. Jun. 29, 2010); *Doe,* 2010 WL 1737606 at * 6.

Here Johnson fails on both prongs. By April 11, 2008, Mahoney had met with Johnson twice. Doc. 57 at 4. Mahoney testified at the evidentiary hearing that by that date he in fact had conveyed the government's first plea offer to Johnson, and this Court credits his testimony as true. *See also* P-16 at 10.[4] In fact, at the April 11, 2008 hearing on Johnson's letter-request for replacement counsel, doc. 25, Johnson himself complained that when Mahoney "met with me . . . I did mostly the talking. And what he spoke up on was basically me copping out to a lesser charge." P-16 at 8. "Copping to a lesser charge" is precisely what Knoche had just offered. P-2; G-8. And by that date *only* the April 4th offer existed, so Johnson's April 11 comment is reasonably construed to confirm that Mahoney had communicated Knoche's first offer to him.[5] Johnson's second trial counsel, McLeod, also testified that

---

[4] Mahoney identified this exhibit as the notes that he generated shortly after receiving the first plea offer, and for him they confirmed that he timely conveyed the substance of the offer to Johnson either by telephone, shortly after he received the offer, if not in person, just after the April 11, 2008 hearing. *See also* P-16 at 12 (Mahoney's notes generated after he received Knoche's second plea offer, met with Johnson, and conveyed the substance of that offer *plus* the first offer, which Mahoney then believed may still be available).

[5] Mahoney testified that he would have conveyed this first plea offer to Johnson either by telephone call or, more likely, following the April 11, 2008 hearing. But Johnson "was not interested from the very beginning ... he wasn't indicating that he

was guilty, and in fact later indicated that he was not in fact guilty and wanted to prove his innocence." Mahoney did not communicate Johnson's rejection of that offer to Knoche simply "to keep Mr. Johnson's options open to him."

Evidence supporting Johnson's version of events includes Mahoney's concession that his file notes do not include a notation of Johnson's rejection of the first plea offer. *See* P-16; G-10. However, he testified that this was not unusual for him. Next, Mahoney's July 9, 2008 letter to Johnson (P-10), warning him that trial was approaching so Johnson must cooperate with him, speaks of Johnson's potential decision "to accept this offer," and thus fails to acknowledge the existence, by that point in time, of Knoche's *two* offer*s*. Mahoney explained that this perhaps (he could not firmly recall) was a result of his then belief that the second plea offer may have superseded the first.

Next, Johnson illuminated the lack of April 11, 2008 detail in Mahoney's billing records for his representation of Johnson. *Compare* P-12 at 8 ("5/9/08: Review and evaluate government's [second] plea offer; compare plea to potential sentence if convicted"), *with* P-12 at 7 (no mention of first guilty plea offer in April, 2008 time period). Mahoney cannot recall the why behind that gap, but suggested that, since it was his practice to confer with clients like Johnson in and around court hearings (to avoid having to drive to jails), he may have billed it as "hearing prep." However, the only mention of "prep" in that time frame is his April 9, 2008 billing entry: "Review motions in preparations for hearing." P-12 at 7. As noted *supra*, however, not every event that occurs in a criminal case is recorded. Too, Mahoney testified that it is common to "write off" time "as a service to the Court," and thus he makes no attempt to record the topic of every conversation, etc., in his billing records.

Finally, Johnson super-illuminates the fact that Mahoney's § 2255 affidavit in this case, P-15, only references the first Knoche plea offer and not the subsequent plea offer to which Mahoney testified (and is referenced in the text above). Evidently Johnson seeks to suggest that Mahoney failed to keep track of the offers and thus should not be credited now, on his insistence that he did.

Examined about this during the evidentiary hearing, Mahoney acknowledged this limitation but emphasized that it did not, by its terms, mean that there were *no other* extant plea offers. The Court also notes that the focus of Johnson's § 2255 motion is that *first* offer. Mahoney also referenced his July 9, 2008 letter to Johnson (G-11) and insists that it "relates to both" plea offers, though he conceded that it uses the term "plea offer" (hence, in the singular). But, he testified, "my notes would show where, you know I presented it on the second occasion when there were two plea offers . . . I presented them to Mr. Johnson, or attempted to present them to Mr. Johnson as plea offers that he might want to take advantage of, and again my

12

when she took over the case it was her understanding that Johnson had rejected "the previous plea offers." As the Government pointed out on cross, there were only two plea offers in existence at that time, which by definition includes Knoche's first.

After carefully considering all of the evidence, the Court finds that Mahoney informed Johnson about the first offer, Johnson rejected it, and he is now re-writing history in an attempt to try to capture the first offer's benefit. Hence, Mahoney did not act deficiently. Even if he had, however, Johnson's claim would still fail, since he cannot show prejudice.

Johnson's April 11, 2008 complaint before this Court was that he did not want to plead guilty because he was innocent: "I mean, I'm locked up for something I don't have anything to do with." Doc. 57 at 8-9. This innocence claim negates his claim that he was guilty, had wished to plead guilty, and thus would have taken Knoche's first offer if informed of it (evidently at the time Johnson simply refused it, gambling on a better result as his case wore on, then simply lost that gamble). The government questioned him on this statement at the evidentiary

---

testimony is that if he wanted to plead guilty, it would be my advice that we try to plead guilty under the first plea offer."

13

hearing; Johnson flopped about like a freshly caught fish hauled up on a river bank. He insisted that when he protested his innocence to *this* Court ("I don't have anything to do with. . . .") he was referring to *state court armed robbery* charges, even though on April 11, 2008, he was protesting his innocence to a *federal* court judge presiding over the *federal* charges against him. And Mahoney testified that Johnson "never admitted to violating those . . . criminal statutes [that] he was charged with." Johnson, Mahoney reiterated during the June 29th hearing, "indicated [then] that he was not guilty." *See also* doc. 64-1 at 2 ¶ 5. The Court disbelieves Johnson's explanation.[6]

For the reasons explained above, James Nathan Johnson's 28 U.S.C. § 2255 motion should be **DENIED**. Applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*,

---

[6] At the evidentiary hearing Johnson testified that he told Mahoney in April, 2008, that he was guilty of *all* the federal charges brought before him in this Court. And yet, he claims, in his November 12, 2009-filed § 2255 motion, this: "Petitioner explained to McLeod [and Mahoney for that matter] that he was not guilty of possessing the firearm in furtherance of the marijuana count." Doc. 56 at 17. The Court rejects Johnson's proffered explanation for this contradiction, as elicited through rehabilitative direct questioning by his § 2255 counsel, that he "misunderstood" what he at that time was claiming (i.e., he was innocent because he did not possess a firearm) because he did "not understand" the difference between actual and constructive possession of a firearm. Defendant is a repeat offender and veteran criminal, *see* doc. 59 at 5, 10, no doubt savvy enough to grasp that distinction.

14

2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  13th  day of July, 2010.

/s/ *[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA